JUDGE PETERS
delivered the opinion of the court.
For the accommodation of the poor and helpless of the respective counties of this commonwealth the legislature has not only authorized but, as we interpret the law, made it the imperative duty of the several county courts of the state to purchase land, not exceeding two hundred acres, with suitable buildings, furniture, implements, etc., to be dedicated to that humane purpose, and prescribed the manner of raising the money to pay for the property named, and given directions for the safe and proper management of the institution. (Revised Statutes, chap. 75.)
At the time of that enactment there were comparatively very few free colored people in the commonwealth, and the language is comprehensive enough to include the paupers among them within the beneficent objects of the law; but slaves were not included, because the law made it the duty of masters to *141 provide for the comfort and sustenance of their aged, infirm, and disabled slaves.
After the slaves were emancipated in December, 1865, it was obvious that additional legislation was necessary for the maintenance of the paupers among that class of persons, and to provide a remedy the act of the 16th of February, 1866, was passed. (Myer’s Supp. 738.) The emergency was sudden, and the time to deliberate and mature the best plan short. This act was passed as the best at the time suggested.
On the 9th of March, 1867, another act was passed, repealing the first act and substituting the last one in its place, the second section of which provides that in addition to the capitation tax already levied by the laws of this commonwealth a tax of two dollars shall be levied on every male negro and mulatto over the age of eighteen years, which shall be assessed and collected as other taxes and go into the fund aforesaid — a fund provided for in a previous section; and section 4 provides that the taxes collected under this act shall be applied exclusively to the support of the negro and mulatto paupers, and the education of negro and mulatto children in the county in which it was collected. (1 Acts of 1867, pp. 94, 95, 96.) This act was amended on the 9th of January, 1868, by providing that no part of the fund authorized to be raised by the act approved March 9, 1867, shall be applied to school purposes as therein provided, except whatever excess there may be after providing for the negro and mulatto paupers in each county; and section 2 provides that no part of said fund collected in the present year shall be applied except as provided in the first section of this act. (1 Acts of 1867 — 8, p. 4.) An act approved the 9th of February, 1871, provides:
"Sec. 1. That an act entitled an act for the benefit of the negroes and mulattoes of this commonwealth, approved March 9, 1867, be and the same is hereby repealed.
"Sec. 2. That hereafter the same tax per capita, and the *142 same rate of taxation on real and personal estate (except taxes for common-school purposes), shall be collected of all the negroes and mulattoes in this commonwealth as of the white population, and no others.” (1 Acts of 1871, p. 18.)
Appellant alleges that he was allowed by the County Court of Franklin County fifty dollars for taking care of and providing for Lucy Branham, a pauper woman of color, for the year 1868; that he was allowed the same sum by said court for taking care of and providing for her for the years 1869 and 1870, fifty dollars for each year; that only forty dollars had been paid, leaving due to him one hundred and ten dollars; that he had repeatedly demanded payment of said last-named sum from said court, sitting as a court of claims for said county, and payment had hitherto always been refused him; and he therefore prays for a mandamus against said judge and justices of said court to compel them to levy a tax sufficient to satisfy his debt, and costs, etc.
Appellees, after denying some immaterial facts, in their answer say they had some years previous to 1869 been in the habit of making allowances to persons for taking care of negro paupers, to be paid out of the revenue derived by poll-tax and taxes collected from negroes only; that the allowance of fifty dollars per year to appellant for the years 1868, 1869, and 1870 for taking care of Lucy Branham, a colored pauper, was made to be paid out of the fund derived from taxes collected from negroes by way of poll-tax and on the valuation of their taxable property; that for the years named the sums collected from negroes in the county were insufficient to pay in full all allowances made for keeping paupers of color, and in consequence thereof they ordered said claims to be paid pro rata to the persons having them; and they refer to the orders of court made on the subject, and file copies of them with their answer. They deny that they owe appellant any thing; deny that they have the legal authority to levy a tax on the citizens generally *143 to pay appellant’s claim; aver that they have done all they could to satisfy the demand of appellant; and ask that the petition be dismissed.
The court below did dismiss the petition, with costs, and appellant'seeks a reversal of that judgment.
Before the act of the 9th of March, 1871, was passed appellant’s claim had been allowed, and the part which then remained unpaid was a subsisting debt against the county, and it was the duty of the court of claims to use all the means provided by law to raise the money to discharge the debt. By the passage of the last-named act, fixing the same tax per capita and the same rate of taxation on the real and personal estate (except taxes for common - school purposes) of the negroes and mulattoes of this commonwealth as of the whites, and repealing the act of the 9th of March, 1867, the resources for discharging the existing liabilities pf the several counties of the commonwealth for the sustenance and comfort of colored paupers were enlarged, unless, as is contended by appellee, the operation of the statute is to be restricted to liabilities incurred since its passage. There is no express provision to that effect in the statute, nor will the language authorize such an interpretation; for if that be the meaning of it, then the legislature by repealing the previous act has taken from the court of claims the power to levy any tax whatever on white or black to pay the claims allowed for taking care of colored paupers. Such could not have been the intention of the legislature.
The answer of appellee, as we construe the law, presented no defense, and it was the duty of the court of claims to have provided the means of paying the demand of appellant.
Wherefore the judgment is reversed, and the cause is remanded with directions to award the writ as prayed for in the petition, and for further proceedings consistent herewith.